IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ALISHA SMITH o/b/o N.F. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. CBD-10-2065 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Alisha Smith for her daughter, N.F, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court are Plaintiff's Motion for Summary Judgment and Commissioner's Motion for Summary Judgment. The Court has reviewed these motions and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

1

**PROCEDURAL BACKGROUND**

On November 14, 2006, Plaintiff's mother filed for disability benefits on behalf of Plaintiff.[1] R. 102. The Commissioner denied Plaintiff's claim on first review on February 21, 2007, R. 39, 59-61, and on reconsideration on May 24, 2007, R. 40, 64-65. On July 12, 2007, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), R. 66, and a hearing was held on May 20, 2009, in Baltimore, Maryland, R. 19. On September 30, 2009, the ALJ issued a written decision concluding that Plaintiff was not disabled under Section 1614(a)(3)(C) of the Social Security Act. R. 44-58.

The ALJ evaluated Plaintiff's claim using the three-step sequential process set forth in 20 C.F.R. § 416.924(a), and further explained below. *See*, *infra*, Standard of Review. At the first step, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity at any time relevant to this decision." R. 47. At the second step, the ALJ determined that Plaintiff has a severe impairment of attention deficit hyperactivity disorder ("ADHD") and a non-severe impairment of asthma. R. 47. At the third step, the ALJ determined that (a) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);" and (b) Plaintiff "does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a)." R. 49. As a result, the ALJ concluded that Plaintiff "has not been disabled, as defined in the Social Security Act, since November 14, 2006, the date the application was filed (20 CFR 416.924(a))." R. 57.

---

[1] The Protective Filing Date on the Disability Report is November 14, 2006. R. 102. Although a later Application Summary for Supplemental Security Income lists the application date as December 5, 2006, R. 92, the Court agrees with the Administrative Law Judge that the application date is November 14, 2006, R. 44.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. R. 15-18. The Appeals Council denied Plaintiff's request on June 10, 2010, making the ALJ's decision final and appealable. R. 10-12. The "Appeals Council denial notice" originally was not delivered to Plaintiff because of an incorrect address; thus, the time to appeal began to run on July 22, 2010. *See* R. 2.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence, and the ALJ applied the correct law. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks omitted)).

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d

at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If an ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A child is deemed legally disabled if she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906 (2009). The Code of Federal Regulations outlines a three-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.924(a). If she is doing such activity, she is not disabled under the regulations. *See id*.

2) If she is not doing such activity, determine whether she has "an impairment or combination of impairments that is severe." *Id*. If she does not have such impairment or combination of impairments, she is not disabled under the regulations. *See id*.

3) If she does have such impairment or combination of impairments, determine whether she has "an impairment(s) that meets, medically equals, or functionally equals the listings." *Id*. If she does have such impairment(s), and it meets the duration requirement, she is disabled under the regulations. *See id*. If she does not have such impairment(s), or the impairment(s) does not meet the duration requirement, she is not disabled under the regulations. *See id*.

A child's severe impairment "functionally equals the listings" if it is "of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a); *see also* 20 C.F.R. § 416.926a(d). The six domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii)

4

Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

A child has a "marked" limitation in a domain if the child's impairment

> interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation if the child's impairment

> interferes very seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be very seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating . . . give[n] to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

In determining whether a child's impairment(s) functionally equals the listings, the Commissioner evaluates the effects of severe and non-severe impairments. 20 C.F.R. § 416.926a(a). The Commissioner also considers the

> relevant factors in §§ 416.924a, 416.924b, and 416.929 including, but not limited to: (1) How well you can initiate and sustain activities, how much extra help you need, and the effects of structured or supportive settings (*see* § 416.924a(b)(5)); (2) How you function in school (*see* § 416.924a(b)(7)); and (3) The effects of your medications or other treatment (*see* § 416.924a(b)(9)).

*Id*.

# ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for further proceedings, Pl.'s Br. 33, for two reasons:

1) The ALJ did not accord controlling weight to Plaintiff's treating sources, who show that Plaintiff "functionally equals a childhood listing and that she meets a listing," Pl.'s Br. 22-25, 33; and

2) The ALJ disregarded evidence, including Plaintiff's treating sources' opinions, Plaintiff's teachers' comments, and Plaintiff's Individualized Education Program ("IEP"), rendering the ALJ's decision unsupported by substantial evidence, Pl.'s Br. 26-33.

For the reasons set forth below, the decision of the ALJ is affirmed.

## I. The ALJ Properly Weighed The Evidence, Including Plaintiff's Treating Sources.

Plaintiff first argues that the ALJ erred by not according controlling weight to the opinions of Shaunti David, M.D., Plaintiff's pediatrician; Joyce Wong, M.D., one of Plaintiff's doctors at Kennedy Krieger Institute; and Rebecca Albury, C.R.N.P., one of Plaintiff's nurse practitioners at Kennedy Krieger Institute. Pl.'s Br. 22-25. Plaintiff asserts that these medical professionals had opined that Plaintiff functionally equals or meets a listing, and that those opinions should be controlling.

The Fourth Circuit has held that

> [w]hile the [ALJ] is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence.

*Smith*, 795 F.2d at 345-46 (quoting *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983) (internal quotation marks omitted); *see also Coffman*, 829 F.2d at 517 (noting the "attending physicians rule").

If, however, the "medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). Further, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or *if it is inconsistent with the other substantial evidence in the case record*." SSR 96-2P, 1996 WL 374188, at *2 (July 2, 1996) (emphasis added); see also *id*. at *4 (an ALJ should not give controlling weight to "a treating source's medical opinion on what an individual can still do despite . . . her impairment(s) . . . if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion."). For example, a treating source's opinion is not controlling if it provides that "the individual is significantly limited in the ability to do work-related activities, but the opinion is inconsistent with the statements of the individual's spouse about the individual's actual activities, or when two medical sources provide inconsistent medical opinions about the same issue." *Id*. at *3. "Inconsistent" evidence "need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id*. at *3. The "ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Here, Plaintiff's records reveal that Plaintiff has ADHD. Plaintiff's teachers and medical care professionals found the effects of this impairment to be severe, and the ALJ concurred. *See, e.g.*, R. 47; R. 100-01 (on September 15, 2006, Plaintiff's teacher, Ms. Mackey noted that Plaintiff required "lots of attention" and had serious problems with concentration, following

7

directions, and being over-aggressive and stubborn); R. 149-51 (Plaintiff's October 5, 2006, Devereux Early Childhood Assessment showed that Plaintiff scored in the 14th percentile for self-control); R. 253-56 (after evaluating Plaintiff on September 12, 2006, Amy Kirkner, C.R.N.P., and Paul Lipkin, M.D., with Kennedy Krieger Institute's Center for Development and Learning noted that Plaintiff "exhibit[ed] behavior consistent with the diagnosis of [ADHD]," was "extremely impulsive," and was "very distractible"). To control Plaintiff's ADHD, on November 21, 2006, Dr. Lipkin and Ms. Kirkner recommended that Plaintiff begin using Adderall XR each morning and to "[c]ontinue working with the Department of Behavior Psychology at Kennedy Krieger Institute for behavior modification and management." R. 259. Plaintiff began taking the medication on December 2, 2006. R. 260. Plaintiff incurred adverse side effects with this medication; thus, Dr. Wong and Ms. Albury changed Plaintiff's medication to Focalin on December 29, 2006. R. 260-63. On July 13, 2007, Ms. Albury noted that Plaintiff's medications wear off in the afternoon, and so recommended that Plaintiff take another tablet of Focalin at 3:00 p.m. R. 424-26. On November 1, 2007, Ms. Albury increased Plaintiff's dose of Focalin at 11:30 a.m. because she remained hyperactive in the afternoon. R. 415-18. On April 3, 2008, on July 10, 2008, and on October 22, 2008, Plaintiff's medical professionals, including Ms. Albury and Dr. Lipkin, again increased Plaintiff's medication dosages to further control Plaintiff's ADHD. *See* R. 192-96; 209-12; 215-18.

Plaintiff argues that because Dr. David, Ms. Albury, and Dr. Wong were Plaintiff's treating sources, the ALJ should have given some of their opinions controlling weight. She provides that Dr. David reported in January 2007 that Plaintiff was "very hyperactive, will not sit still, and [wa]s very difficult to examine during office visits," Pl.'s Br. 22 (citing R. 285), and in August 2007 similarly noted that Plaintiff was "very hyperactive and cannot sit still in the office

for an examination." Pl.'s Br. 22-23 (citing R. 409-11). Plaintiff also provides that on July 13, 2007, Ms. Albury and Dr. Wong found that Plaintiff had marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating to others. Pl.'s Br. 24 (citing R. 406-08). Dr. David's, Ms. Albury's, and Dr. Wong's observations, however, contradict other medical professionals' opinions from this time period – when Plaintiff was only taking medication in the morning. Thus, the ALJ was correct in not according those opinions controlling weight.

For example, Dr. Wong and Ms. Albury noted in February 2007 that Plaintiff was "[s]till active but more attentive;" was "[a]ble to focus in school;" exhibited "[n]o aggressive behaviors;" was "[a]ble to pay attention and follow directions" in school; was "[s]till active, but behavior [wa]s acceptable" at home; and was "[a]ctive, happy during visit." R. 377-80. Ms. Albury noted on April 12, 2007 that Plaintiff's "behavior and self control [were] improving;" Plaintiff was "[s]till active but able to follow directions, focus and complete activities;" "[t]here [wa]s significant improvement in behaviors when [Plaintiff] takes medicine;" and Plaintiff had "no aggressive behaviors or extreme temper tantrums." R. 373-76; *see also* R. 424 (On July 13, 2007, Ms. Albury recorded that while on her medication Plaintiff "listens, focuses, sits still and is cooperative," and that when her medications "wear off around 2-3 pm," Plaintiff "loses focus, [is] impulsive.").

Plaintiff's school teachers and administrators also held different opinions from Dr. David, Ms. Albury, and Dr. Wong regarding Plaintiff's condition during this time period. Ms. Nicole Joyner, Disability Coordinator at Plaintiff's school, for example, indicated on January 9, 2007, that Plaintiff had "no problem" to a "slight problem" in the acquiring and using information domain," and was "getting better at calming herself and using her words to express her feelings."

R. 276-83; *see also* R. 132 (Ms. Jacqueline Graham, Plaintiff's teacher, noted on May 15, 2007, that she had "noticed a positive change in [Plaintiff] throughout the school year. She [wa]s doing very well with managing her emotions and she[ was] very cooperative with her teachers and peers."). Dr. David's, Ms. Albury's, and Dr. Wong's opinions also conflict with the joint opinion of Dr. Adrienne DeSantis, therapist with Kennedy Krieger Institute, and Susan Perkins-Parks, Ph.D., a licensed psychologist with Kennedy Krieger Institute, in January 2007 that Plaintiff met all of her goals and exhibited improved behaviors during various activities with her therapist. R. 386; *see also* R. 385 (In March 2007, Dr. DeSantis and Dr. Perkins-Parks noted that Plaintiff had met her treatment goals, that her "[t]antrums remain at low levels, aggression continues to be consequated with time out, praise continues to be effective, and toilet problems no longer occur."). Given that significant evidence is inconsistent with Dr. David's, Ms. Albury's, and Dr. Wong's opinions during this time period, the ALJ was correct in not according those opinions controlling weight.

Plaintiff additionally argues that Dr. David's and Ms. Albury's opinions from later time periods should hold controlling weight. Plaintiff provides that in August 2007, Dr. David noted that Plaintiff had marked limitations in acquiring and using information, attending and completing tasks, moving and manipulating objects, and health and physical well-being. Pl.'s Br. 23 (citing R. 409-411). Plaintiff also provides that in April 2008, Ms. Albury noted that Plaintiff "was reportedly whining and having temper tantrums, exhibiting a poor attention span, particularly in the afternoon and evening;" and Plaintiff attended therapy sessions "focused on increasing positive behaviors, decreasing tantrums, increasing positive interactions between [Plaintiff] and her sister." Pl.'s Br. 24-25 (citations omitted). Plaintiff further provides that on May 8, 2009, Ms. Albury signed a report in which she stated that Plaintiff had "marked

10

limitations in acquiring and using information, in attending and completing tasks, and in interacting and relating to others." Pl.'s Br. 23-24 (citing R. 431-34).

The ALJ correctly refused to accord these opinions controlling weight. First, Ms. Albury's opinions, such as her April 2008 and May 2009 opinions, cannot be controlling because controlling medical opinions can only be provided by "acceptable medical sources;" and, as a nurse practitioner, Ms. Albury is not an "acceptable medical source." *See* 20 C.F.R. §§ 416.913(a), 416.927(a)(2), 416.927(d); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Second, the evidence presented by Plaintiff conflicts with other substantial evidence from this period – when Plaintiff began taking additional medication in the morning and afternoon. For example, on October 22, 2007, Plaintiff's teacher, Ms. DelRose Clarke, observed that Plaintiff "[t]akes action to avoid possible disputes over rights;" "[u]nderstands the importance of self-help skills and their role in healthy living;" "[f]ollows and understands the purpose of classroom procedures;" "[s]uggests a solution to solve a problem;" "[w]orks on task over time, leaving and returning to complete it;" among other positive social/emotional development and cognitive development characteristics. R. 152. In October 2008, Dr. Lipkin and Ms. Albury noted that Plaintiff's medication "has been effective at controlling [Plaintiff's] behavior," and that she seems to be doing well academically, including "complet[ing] her homework without difficulty." R. 192. On May 12, 2009, Plaintiff's teacher, Ms. Darlene White, noted that Plaintiff "has adjusted positively to Baltimore Lab [school;] . . . . is well-liked by her peers . . . . [,] shows enthusiasm for learning and demonstrates a strong work ethic." R. 236. Ms. White also noted that Plaintiff "has been working on impulse control, anger management, peer relationships, social inferencing skills" and has "demonstrated progress in all of these important areas." R. 236.

11

Thus, given the inconsistencies between the testimonies of Dr. David, Dr. Wong, and Ms. Albury during the time period in question; the inconsistencies between these three medical professionals and other substantial evidence in the record showing that Plaintiff does not have marked limitations; and the fact that Ms. Albury is not an "acceptable medical source," who could provide controlling medical opinions, the ALJ was not required to accord controlling weight to these three individuals.[2] Further, given the inconsistencies between some of the evidence, the ALJ was legally permitted to accord "significant weight" to the non-examining, non-treating sources, who found no marked impairments. *See* R. 51 ("I find that the State agency non-examining medical experts' opinions are basically consistent with and supported by the findings noted in the claimant's treating and examining medical records. Therefore, I assign these opinions significant weight."); 353-58 (non-examining, non-treating source opinion), 395-401 (non-examining, non-treating sources opinion); *Smith*, 795 F.2d at 346 (citing *Gordon*, 725 F.2d at 235) (If "medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." ).

**II. The ALJ Considered The Entire Record, And His Decision That Plaintiff Does Not Have Marked Limitations Is Supported By Substantial Evidence**.

Plaintiff asserts that because the ALJ did not cite to all of the exhibits, he must not have considered all of the evidence in reaching his decision. Plaintiff then asserts that because the

---

[2] Additionally, some of these records are not persuasive because they do not indicate at what time Plaintiff was examined by these individuals – did these appointments occurred before Plaintiff's medication wore off, and so she exhibited fewer ADHD symptoms, or after her medication wore off, and so she exhibited stronger ADHD symptoms? *See, e.g.*, R. 193 (in October 2008, Dr. Lipkin and Ms. Albury note that Plaintiff incurs "[i]ncreased poor focus and hyperactivity around lunch *without* additional focalin tablet" and "[h]yperactive, short attention, increased conflicts with sister *if does not receive* 4pm focalin tablet" (emphasis added)). As noted above, the ALJ examines the impact of medications and other treatment on the child's impairment. *See, supra*, Standard of Review (citing 20 C.F.R. § 416.926a(a)).

12

ALJ did not consider the entire record, there is not substantial evidence for the ALJ's decision that Plaintiff does not have marked limitations in three domains: acquiring and using information, attending and completing tasks, and interacting and relating to others. Plaintiff is incorrect on both counts. The Court will address each in turn.

### A. The ALJ Considered The Entire Record In Reaching His Decision.

Plaintiff argues that "the ALJ disregarded the opinion of three treating sources . . . , her teachers, the student's IEP and numerous records outlining the severity of [Plaintiff's] impairments . . . . The ALJ cited only exhibits 4F, 5F, 19F, 20F, 22F despite there being over 24 exhibits in the file." Pl.'s Br. 26-27 (citations omitted). Plaintiff's argument is flawed. To begin, the ALJ stated that he "careful[ly] consider[ed] . . . the entire record" in making his findings. R. 46; *see also* R. 50 ("After considering the evidence of record . . . ."). The ALJ's opinion demonstrates that he did so – the ALJ cites to a variety of the exhibits from the record that cover the period in question. Further, the "ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was not considered." *Corcoran v. Astrue*, No. SKG-08-913, 2009 WL 3100350, at *17 n.5 (D. Md. Sept. 22, 2009) (citing *Whittaker v. Astrue*, No. SKG-07-3242, slip op. at 12 (D. Md. 2009); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The ALJ's opinion indicates that the ALJ considered the entire record.

### B. The ALJ's Decision Is Supported By Substantial Evidence.

Plaintiff argues that she has marked limitations in three domains, and the ALJ's decision to the contrary is not supported by substantial evidence because he did not consider portions of the record highlighted by Plaintiff in her brief. Plaintiff first argues that she has a marked limitation in acquiring and using information. Pl.'s Br. 27-28. She argues that the ALJ did not "mention[] a speech language assessment performed by the Baltimore Lab School," in which she

13

"exhibited a number of deficits;" and the ALJ did not "cite or weigh" evidence that Plaintiff's "IEP demonstrates that she was in a special education program for the first grade," was prescribed 29 hours of special education each week, received 45 minutes of speech therapy each week, and was placed in the Baltimore Lab School, which was "founded for children with learning disabilities." *Id*.

As explained above, the ALJ considered the entire record in evaluating Plaintiff's claim. The Court does not question the ALJ's factual findings on appeal if they were based on proper legal standards, *see Hays*, 907 F.2d at 1456; and here, Plaintiff does not dispute that the ALJ properly articulated the standards for evaluating a limitation in this domain, *see* R. 52. Instead, to support her argument that the ALJ's decision was not supported by substantial evidence, Plaintiff merely presents evidence favorable to her position. The Court does not reweigh the evidence on appeal. *Hays*, 907 F.2d at 1456; *Smith*, 795 F.2d at 345.

Further, the evidence cited by the ALJ substantially supports his decision. For example, and as Plaintiff admits, *see* Pl.'s Br. 27-28, the ALJ considered Plaintiff's IEP, *see* R. 48, which contained positive reviews of Plaintiff's ability to acquire and use information. The ALJ also considered Dr. Wong's, Dr. David's, Ms. Albury's, Ms. Graham's, and Ms. Joyner's opinions on Plaintiff's condition, some of which provide contradictory evidence to Plaintiff's – for example, the latter two found that Plaintiff possessed no-to-slight limitation in this domain. R. 52. The ALJ also examined numerous reports of Plaintiff's medical professionals dated from 2006 and early 2007 indicating that Plaintiff "more often than not . . . was calmer, and able to focus and complete her work when she was on medication." R. 52 (citing ALJ Exhibit 4F). The ALJ additionally noted that "on May 12, 2009, Ms. White reported that . . . [Plaintiff] had developed an enthusiasm for reading." R. 53 (citing ALJ Exhibit 16E). These documents provide

substantial evidence in support of the ALJ's decision that Plaintiff does not have a marked limitation in the domain of acquiring and using information.

Second, and similarly, the ALJ's decision that Plaintiff does not have a marked limitation in the domain of attending and completing tasks is supported by substantial evidence. As with the first domain, Plaintiff presents evidence from the record that supports a finding of marked limitation in this domain in order to show that the ALJ's decision was not supported by substantial evidence. Again, the ALJ considered this evidence, and found other evidence more convincing, such as Plaintiff's school records, the reports in ALJ Exhibit 4F, and Dr. David's, Ms. Graham's, and Ms. Joyner's reports showing that Plaintiff had only slight or less limitation in this domain. R. 53. The Court cannot question this factual finding given that the ALJ relied upon the correct legal standards. What is more, this evidence is substantial.

Finally, substantial evidence supports the ALJ's decision that Plaintiff does not have a marked limitation in the domain of interacting and relating with others. The ALJ relied on the proper regulations, and in weighing the evidence, found that "the evidence of record shows that . . . [Plaintiff] generally gets along with her peers and . . . can interact well with her teachers and classmates." R. 54 (citing ALJ Exhibit 4F). The ALJ also weighed Dr. Wong's and Dr. David's opinions with Ms. Graham's and Ms. Joyner's opinions in reaching his conclusion. R. 54. These factual findings and resolutions of evidentiary conflicts are properly left to the ALJ, not this Court. *See Hays*, 907 F.2d at 1456. Additionally, these facts constitute substantial evidence in support of his findings. Thus, the ALJ's decision stands.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

November 9, 2011                                              /s/
                                                    Charles B. Day
                                                    United States Magistrate Judge

CBD:MKH